UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-20847-RAR

LUIS SANCHEZ,

      Plaintiff,

v.

HON. ASHLEY MOODY, ATTORNEY
GENERAL, STATE OF FLORIDA, *et al.*,

      Defendants.

_____/

## ORDER DISMISSING AMENDED COMPLAINT AND CLOSING CASE

**THIS CAUSE** comes before the Court on Plaintiff Luis Sanchez's *pro se* "Amended Complaint and Demand for Jury Trial," [ECF No. 11].  On July 16, 2025, the Court dismissed Plaintiff's initial Complaint pursuant to 42 U.S.C. § 1983, [ECF No. 1], for failure to state a claim upon which relief can be granted.  *See* Order to Amend, [ECF No. 8].  The Court permitted Plaintiff to file an Amended Complaint correcting various deficiencies, including pleading with further specificity why his access-to-courts claim under the First Amendment was not barred by the statute of limitations.  *Id.* at 11–12.  After careful review, the Court finds that Plaintiff's Amended Complaint again fails to state a plausible claim for relief and therefore must be **DISMISSED**.

## BACKGROUND

Plaintiff's allegations are as follows.  Plaintiff was sentenced for his state-law crimes in 1996.  *See* Am. Compl. ¶ 13.  Plaintiff attempted to receive his transcripts from his trial lawyer, Arthur Murray, between 1996–2001, "to no avail[.]"  *Id.* ¶ 14; *see also id.* at 55 (writing to Murray that he "surrender any and all legal documents that pertain to" his criminal cases).  Willetta Carter, the Appeals Coordinator for Laws Reporting, Inc., advised Plaintiff that, in order for him to receive

transcripts, he "would be required to provide an order declaring [him] indigent signed by a judge and a docket sheet for the dates requested." *Id.* ¶ 14.

On August 26, 2004, the state court issued an order finding Plaintiff indigent for the purpose of acquiring the trial, plea, and sentencing transcripts. *Id.* ¶ 15. After Plaintiff acquired the docket sheet and the state court's order from the Clerk of Court, Plaintiff "provided them to Laws Reporting, Inc.," with attention to Carter. *Id.* ¶ 16. Plaintiff "request[ed] the transcripts for [his] 3 days of trial, plea agreement, and sentencing for the dates provided on the docket[ ] sheet submitted with the Order of Indigency." *Id.* He was told that "once transcription was complete, the transcripts would be provided" to the Clerk of Court, "who would make them available to the parties on request." *Id.*

On October 6, 2004, Plaintiff told the Clerk of Court that, among "his requested transcripts of trial and sentencing," he was only provided with "the third day of the trial, May 2, 1996[,] which was the change of plea" hearing. *Id.* ¶ 17. He ostensibly did not receive transcripts for "the first and second day of trial or the sentencing hearing." *Id.* On November 5, 2004, Plaintiff filed a "motion to expedite the ruling on his request for the rest of his trial transcripts[.]" *Id.* ¶ 18. The motion, he says, was "granted," but the Clerk of Court "never provided the rest of the transcripts requested." *Id.*

Plaintiff "continued attempting to acquire the transcripts" from both Laws Reporting, Inc. and the Clerk of Court for "three years until January 25, 2007." *Id.* ¶ 19. At that time, the Clerk of Court advised Plaintiff "to contact [the] Court Reporter for transcripts." *Id.* But when Plaintiff contacted Laws Reporting, Inc., he was told in a letter by Paula Laws on February 23, 2007, that his documents had been "destroyed," although Plaintiff had not received notice prior to their destruction. *Id.* ¶ 20; *see also id.* at 71 ("Please be advised that according to the rules of court,

criminal court notes are required to be kept for 10 years. We would not have the notes of 7/11/1996 since they have been destroyed.").

Plaintiff then "attempted to verify the destruction by contacting" the Clerk of Court. *Id.* ¶ 22. In the meantime, Plaintiff had filed a postconviction motion for withdrawal of his plea "based upon ineffective assistance of counsel," arguing that the sentences he received "were contrary to what was stated by counsel to coerce [him] to plea[d] open to the court." *Id.* Years later, he received "verified proof of the destruction of the records" by affidavit on January 21, 2010. *Id.* Upon "receiving official confirmation of the destruction of the transcripts," Plaintiff sought from the Clerk of Court "what records still existed in the Clerk files," given that his postconviction proceedings were still unresolved in the state court. *Id.* ¶ 23. The Clerk of Court "did not respond to multiple letters of inquiry and phone calls by family members trying to obtain the transcripts." *Id.* At one point on October 19, 2017, the Clerk's office instructed Plaintiff to "send $5.00" to receive copies of his sentencing score sheets, information, judgment, sentence, and clerk's minutes. *See id.* at 92.

Eventually, Plaintiff "received the necessary papers" to file a "motion to correct illegal sentence" on September 24, 2021, in the state postconviction court. *Id.* ¶ 25; *see also id.* at 96. On January 4, 2022, the state court granted Plaintiff's motion in part, correcting his sentence as to one count. *See id.* at 96. ("[I]t is hereby ORDERED AND ADJUDGED that the Defendant's Motion to Correct Illegal Sentence is hereby GRANTED and the Defendant's Judgment and Sentence be corrected as to Count 3 only to five (5) Years in State Prison with NO special provision of a three (3) year firearm minimum mandatory."). But Plaintiff says that he "cannot access [a] state remedy . . . for correction of additional illegal sentences because statute and rule require[ ]

attachment of record which is not available" to him because of the "destruction[ ] of records[.]" *Id.* at 17.

## **LEGAL STANDARD**

The Court "*shall* review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A (emphasis added).  The definition of a "prisoner" includes "any person incarcerated or detained in any facility who is . . . accused of [or] convicted of . . . violations of criminal law." *Id.* § 1915A(c).  In conducting its screening of a prisoner's complaint, the Court must "dismiss the complaint[] or any portion of the complaint," when it is (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted[;]" or (2) "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b).  Similarly, if a plaintiff wishes to proceed *in forma pauperis* rather than prepaying the filing fee, § 1915(e)(2) requires the court to "dismiss [a] case *at any time* if the court determines that . . . the action" fails for the same enumerated reasons articulated under § 1915A. *Id.* § 1915(e)(2)(B) (emphasis added).

To state a claim upon which relief may be granted, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

Although the Court must hold the allegations in a *pro se* civil rights complaint "to a less stringent standard than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), *pro se* litigants are still required to comply with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of Florida.  *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("[A *pro se* litigant] is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure."); *see also* S.D. FLA. L.R. 1.1 (explaining the Local Rules apply in all proceedings unless otherwise indicated and that the word "counsel" shall apply to a party that is proceeding *pro se*).  The Federal Rules of Civil Procedure require, in pertinent part, that a pleading that states a claim for relief contain "a short and plain statement of the grounds for a court's jurisdiction," "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought[.]"  FED. R. CIV. P. 8(a).  "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances[,]" and "each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense."  *Id.* 10(b).

## ANALYSIS

With the foregoing framework in mind, the Court turns to the Amended Complaint. Plaintiff reasserts claims against Defendant Willetta Carter, the Appeals Coordinator for Laws Reporting, Inc.; Defendant Paula Laws, the Official Court Reporter for the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida who is also employed by Laws Reporting, Inc.; and the State of Florida, through his "[o]fficial [c]apacity" claim against the "Clerk of Court,"[1] Am. Compl. ¶¶ 8–9, 11.  Plaintiff also advances new claims against Defendant Troiano,

---

[1]  Plaintiff renames the Clerk of Court as Defendant Luis G. Montaldo—who was then-"Appointed Ad Interim" Clerk for Florida's Eleventh Judicial Circuit Court.  Am. Compl. ¶ 10.

Laws, & Associates ("Laws Reporting, Inc.")—a company that contracts "with the State of Florida to provide Official Court Reporting Services to the Eleventh Judicial Circuit Court system," *id.* ¶ 7; and Defendant Arthur Murray, who appears to have been Plaintiff's appointed public defender, *id.* at 15.

Liberally construing the Amended Complaint, Plaintiff brings several substantive constitutional challenges: violations of his "Sixth and Fourteenth Amendment rights to effective assistance of counsel and equal protection under the law" and his Eighth Amendment right to be free from "cruel and unusual punishment" against Defendant Murray, *id.* ¶¶ 26–27; and violation of his First Amendment right of access to courts for "spo[li]ation of evidence" against Defendants Laws, Carter, Laws Reporting, Inc., and the Clerk of Court, *id.* ¶ 28; *see also id.* ¶ 30.[2]  Lastly, Plaintiff seeks nominal, compensatory, and punitive damages from Laws, Carter, Laws Reporting, Inc., and Murray, *see id.* ¶¶ 30–31, 33, and injunctive relief against the Clerk of Court, *see id.* ¶ 32. For the reasons below, Plaintiff's claims are dismissed.

## I.        Plaintiff's Claims Against Defendant Arthur Murray Warrant Dismissal.

To start, Plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and [he] must show that the alleged deprivation was committed by a person

---

[2]  Plaintiff is hardly clear whether he is also suing the Clerk of Court for state-law negligence—but it is possible. *See, e.g.*, Am. Compl. ¶ 29 (alleging the Clerk of Court "was negligent in supervision of his staff and in delegating authority without ensuring the responsibility of the completed task" and that "[s]uch negligent acts of employees" were the "sole responsibility of the defendant Clerk"); *id.* ¶ 1 (bringing suit to "redress deprivations" of his "rights secured to [him] by . . . the State of Florida" (cleaned up)).  That said, the Court ultimately finds that Plaintiff has not sufficiently pleaded a negligence claim under Florida law.  And in any event, as the Court concludes herein that Plaintiff fails to plead a claim under federal law over which it has original jurisdiction, the Court will not exercise supplemental jurisdiction over any state-law claim in the Amended Complaint.  *See, e.g.*, *Thompson v. Belhomme*, No. 12-CV-11, 2012 WL 1758734, at *6 (N.D. Fla. Apr. 30, 2012) ("[W]ith regard to Thompson's state law claims for negligence against Defendants Nichols, Rummel, Haas, and John Doe, it is well established that once a plaintiff's federal claims are dismissed, there remains no independent federal jurisdiction to support the court's exercise of supplemental jurisdiction over state claims against a defendant." (citing *Baggett v. First Nat'l Bank of Gainesville,* 117 F.3d 1342, 1352 (11th Cir. 1997))), *report and recommendation adopted*, 2012 WL 1758711 (N.D. Fla. May 16, 2012).

acting under color of state law" to state a claim under § 1983. *West v. Atkins*, 487 U.S. 42, 48 (1988). But Plaintiff cannot sue his public defender, Defendant Murray, under § 1983. The Supreme Court has held that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); *see also Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) (finding that the public defender "did not act under 'color of state law' notwithstanding his appointment as counsel by a judicial officer").

Plaintiff is plainly suing his public defender for conduct pertaining to his representation during his criminal case. He alleges that Defendant Murray "fail[ed] to exercise reasonable care in performance of his official duty [as] defense counsel" by "failing to secure trial, sentencing, and plea transcripts[.]" Am. Compl. ¶ 26. He also complains that Defendant Murray was "deliberately indifferent" to his "right to appeal by failing to both[ ] order transcription of the record" and "assist [P]laintiff in reconstructing recollections for purpose of preserving sentencing issues for appeal[.]" *Id.* ¶ 27.

Since "it's axiomatic that an aggrieved client cannot sue his public defender under § 1983 for acts she undertook as his defense lawyer," *Johnson as trustee of Levar Curtis Johnson Tr. v. Hillquist*, No. 24-CV-25114, 2025 WL 295156, at *9 (S.D. Fla. Jan. 24, 2025) (citations omitted), Plaintiff's Sixth, Eighth, and Fourteenth Amendment claims against Defendant Murray are **DISMISSED**.

### II.       Plaintiff's Claims Against the Clerk of Court Warrant Dismissal.

Next, Plaintiff sues the Clerk of Court in his official capacity solely for injunctive relief. *See* Am. Compl. ¶¶ 11, 32. He specifically seeks injunctive relief against the Clerk of Court "sufficient to ensure criminal defendants receive the *pro se* assistance required to secure complete

transcripts through active intervention of the Clerk's office," including an order "requir[ing] the Clerk's Office to receive written notification prior to the scheduled destruction of court notes by the Official Court Reporter to prevent reoccurrence." *Id.* ¶ 32.

To begin, the law is unclear whether the Clerk of Court is entitled to quasi-judicial immunity from Plaintiff's claim for injunctive relief. *See Tallahassee Bail Fund v. Marshall*, No. 22-CV-297, 2022 WL 22804294, at *3 n.4 (N.D. Fla. Oct. 11, 2022) (treating the Federal Courts Improvement Act's extension of immunity from injunctive relief to "judicial officers" as not applying to quasi-judicial officials (referencing Pub. L. No. 104-317, 110 Stat. 3847 (1996))). *But see Daker v. Keaton*, No. 20-10798, 2021 WL 3556921, at *3 (11th Cir. Aug. 12, 2021) (instructing the district court to apply the Federal Courts Improvement Act's injunctive relief limitation to Georgia court clerk defendants without analysis).[3]

Nevertheless, the Court is hard-pressed to find that it has any authority to grant the relief Plaintiff seeks here. Plaintiff seeks injunctive relief directed at the Eleventh Judicial Circuit's administrative practices, specifically concerning notice procedures before the destruction of records. It belies basic principles of comity and federalism to think that this Court can "police the state courts or interfere with their ability to regulate their judicial system." *Macleod v. Scott*, No. 14-CV-805, 2015 WL 4523185, at *5 (M.D. Fla. July 9, 2015). As the Court explained in its Order

---

[3]  If the Clerk of Court is subject to the Federal Courts Improvement Act's judicial-officer immunity provision, then Plaintiff's claim against him cannot proceed. That Act amended 42 U.S.C. § 1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Pub. L. No. 104-317, 110 Stat. 3847 (1996). "[T]o receive declaratory relief, the plaintiff must establish a violation, a serious risk of continuing irreparable injury if the relief is not granted, and the absence of an adequate remedy at law." *Daker*, 2021 WL 3556921, at *3 (citing *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000)). Plaintiff has not established a serious risk of continuing irreparable injury; all he seeks is improvement to the administrative functions of the Clerk's office with respect to the handling of other defendants' transcripts, rather than his own. Further, Plaintiff has not established a violation warranting declaratory or injunctive relief.

to Amend, "[d]istrict courts . . . generally lack jurisdiction 'to direct state courts or their judicial officers in the performance of their duties.'" *Martin v. State*, No. 23-CV-283, 2023 WL 11935348, at *1 (N.D. Fla. Nov. 8, 2023) (quoting *Lawrence v. Miami-Dade Cnty. State Att'y Off.*, 272 F. App'x 781, 781 (11th Cir. 2008)), *report and recommendation adopted*, 2023 WL 11935346 (N.D. Fla. Dec. 4, 2023); *see also Bazile v. Moore*, No. CV-17-01035, 2017 WL 2362496, at *3 (S.D. Tex. May 31, 2017) (recognizing that "federal courts have no authority to issue injunctive relief directing state courts or their judicial officers in the performance of their duties" (citation omitted)).

Because Plaintiff sues the Clerk of Court only for injunctive relief that this Court more than likely lacks jurisdiction to grant, his claims against this Defendant are **DISMISSED**.  In any event, Plaintiff appears to be suing the Clerk of Court only for the denial of his right to access the courts based on his alleged participation in the destruction of records.  *See* Am. Compl. ¶ 29 (alleging the Clerk of Court "failed to perform his statutory duties to provide *pro se* assistance to indigent plaintiff by securing the transcripts requested and ordered by the circuit court judge's finding of indigency and plaintiff's request for assistance in obtaining the transcripts" (emphasis added)).  As explained below, Plaintiff's access-to-courts claim fails on the merits; thus, his sole federal claim against the Clerk of Court fails on this alternative basis.

### III.    Plaintiff's Access-to-Courts Claims Warrant Dismissal.

What remains are Plaintiff's First Amendment claims for monetary damages against Defendants Laws, Carter, and Laws Reporting, Inc.[4]  First, the Court finds *Heck* does not apply to

---

[4] Plaintiff has alleged that Laws Reporting, Inc. "is the contracted company with the State of Florida to provide Official Court Reporting Services to the Eleventh Judicial Circuit Court System" and that Paula Laws and Willetta Carter are each employed by Laws Reporting, Inc.  Am. Compl. ¶ 7; *see also id.* ¶¶ 8–9. Since Plaintiff's substantive claims against these Defendants fail, the Court will assume without deciding that these Defendants satisfy the state-actor requirement for § 1983 actions.

Plaintiff's access-to-courts claim, which means that the statute of limitations on his access-to-courts claim has already expired.  Second, even if *Heck* did have any tolling effect, Plaintiff has not stated a plausible access-to-courts claim under the First Amendment.

### A.  Plaintiff's Claims Are Barred By the Statute of Limitations.

The Court concludes that Plaintiff's § 1983 claims against Laws, Carter, and Laws Reporting, Inc. are barred by the statute of limitations.  The statute of limitations for Plaintiff's § 1983 action is measured by the limitations period of the forum state for personal injury torts, which, in Florida, was four years when Plaintiff's case arose.[5]  "Federal law, though, determines when a § 1983 plaintiff's cause of action accrues."  *Chapman v. Dunn*, 129 F.4th 1307, 1315 (11th Cir. 2025) (citation omitted).

Based on his allegations, Plaintiff has known about the destruction of his state court records since at least 2007.  *See* Am. Compl. ¶ 20.  But Plaintiff says that, under *Heck v. Humphrey*, 512 U.S. 477 (1994), he "could not initiate reparation or compensatory action" until the postconviction court "recognized [his] illegal sentence" on January 4, 2022, at which point his claim began to accrue.  *Id.* ¶ 26.  The Court disagrees.

In *Heck*, the Supreme Court held that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated."  512 U.S. at 489–90.  The Court explained that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has

---

[5] "Effective March 24, 2023, Florida's statute of limitations . . . was amended to reduce the statute of limitations for negligence claims from four to two years"; this amendment, however, "appl[ies] to causes of action accruing after the effective date of this act."  *Wesley Tillman Nelson v. City of Jacksonville*, No. 23-CV-343, 2024 WL 7013978, at *2 (M.D. Fla. Dec. 30, 2024) (citing FLA. STAT. § 95.11(4)(a)), *report and recommendation adopted*, 2025 WL 4658716 (M.D. Fla. Jan. 27, 2025).

> been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Id.* at 486–87.  An action is attributable to a conviction when "establishing the basis for the damages claim 'necessarily demonstrates' the invalidity of the conviction" or would "call into question" the lawfulness of the plaintiff's continuing confinement.  *Id.* at 481–82.  In other words, a "§ 1983 action will not lie" where the plaintiff, to prevail on his claim, "would have to negate an element of the offense of which he has been convicted."  *Id.* at 486–87.  *Heck*'s primary concern, therefore, is avoiding conflict between a civil judgment and a criminal one.  It follows that, "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed . . . in the absence of some other bar to the suit."  *Id.* at 487.

Thus, the Court must first determine the elements required in a First Amendment access-to-courts claim to evaluate whether success would demonstrate the invalidity of any criminal judgment.  To state an access-to-courts claim under the First Amendment, "a plaintiff cannot merely allege a denial of access to a law library or adequate attorney, even if the denial is systemic."  *Wilson v. Blankenship*, 163 F.3d 1284, 1291 (11th Cir. 1998) (cleaned up).  Rather, the plaintiff must allege an "actual injury" deriving from the alleged lack of access to the courts; "that is, actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim."  *Lewis v. Casey*, 518 U.S. 343, 348 (1996) (internal quotation marks and citation omitted).

This essential requirement boils down to two elements.  First, the plaintiff must demonstrate that inadequate access to counsel or legal materials "hindered his efforts to proceed with a legal claim in a criminal appeal, postconviction matter, or civil rights action seeking to

vindicate basic constitutional rights." *Id*. (internal quotation marks and citation omitted).  To do so, the plaintiff must plead facts "of such deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials." *Id.* at 1290–91.

Second, "the [defendant's] actions which allegedly infringed an inmate's right of access to the courts must have frustrated or impeded the inmate's efforts to pursue a nonfrivolous legal claim." *Bass v. Singletary*, 143 F.3d 1442, 1445 (11th Cir. 1998) (alteration and emphasis added); *see also Lewis*, 518 U.S. at 353 n.3 ("Depriving someone of an arguable (though not yet established) claim inflicts actual injury because it deprives him of something of value—arguable claims are settled, bought, and sold.  Depriving someone of a frivolous claim, on the other hand, deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions.").  The plaintiff must describe his or her frustrated predicate claim "well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Christopher v. Harbury*, 536 U.S. 403, 416 (2002); *see also Barbour v. Haley*, 471 F.3d 1222, 1226 (11th Cir. 2006) (providing that the actual-injury element requires the plaintiff to "identify within his complaint[ ] a nonfrivolous, arguable underlying claim" (alteration added)).

Courts have grappled with whether requiring a plaintiff to show a non-frivolous underlying claim—one that bears on the validity of a criminal judgment—would, in effect, "call into question" that judgment in a manner *Heck* prohibits.  Some courts read the non-frivolousness requirement as not directly implicating the conviction itself.[6]  Others, however, have reasoned that requiring some

---

[6]  *See, e.g.*, *Lueck v. Wathen*, 262 F. Supp. 2d 690, 699 (N.D. Tex. 2003) (noting that, "[u]nlike the civil rights claims at issue in *Heck*, plaintiff's access claim does not necessarily imply the invalidity of his conviction or sentence"); *Jenkins v. Bartley*, No. CIV-S05-358, 2008 WL 4058088, at *3 (E.D. Cal. Aug. 28, 2008) ("In *Heck*, the plaintiff did not allege he was denied access to the courts but rather claimed that

showing of merit in the underlying challenge necessarily implies the invalidity of the criminal judgment.[7]  To reconcile that divide—and in light of *Heck*'s limitation on damages—courts have narrowed the available relief, permitting recovery only for harms that do not stem from wrongful incarceration.[8]

---

state prosecutors and police had destroyed evidence. [ ]  In contrast, plaintiff's claims in this case do not directly implicate his conviction; instead, he argues that his First Amendment right of access to the court was abridged when he was denied law library access and so was unable to research and understand his right to proceed in pro per and to take other actions to challenge and supplement the perceived inadequacies of counsel's performance."), *report and recommendation adopted*, 2008 WL 4472970 (E.D. Cal. Sept. 30, 2008); *Monical v. Jackson Cnty. Sheriff's Dep't*, No. 17-CV-00476, 2020 WL 571734, at *14 (D. Or. Feb. 5, 2020) ("However, access to courts claims are not necessarily barred by *Heck.*  A prisoner's right to access the court encompasses a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement. . . . Because the plaintiff need only show that the underlying case was nonfrivolous, proof of actual injury does not necessarily imply that plaintiff would have won the underlying case." (cleaned up)).

[7] *See, e.g.*, *Burd v. Sessler*, 702 F.3d 429, 434–35 (7th Cir. 2012) ("Because the underlying claim for which Mr. Burd sought access to the prison law library was the opportunity to withdraw his guilty plea, he cannot demonstrate the requisite injury without demonstrating that there is merit to his claim that he should have been able to withdraw the plea. Such a showing necessarily would implicate the validity of the judgment of conviction that he incurred on account of that guilty plea."), *abrogated by Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020); *Dennis v. Costello*, No. 99-2069, 1999 WL 668120, at *1 (2d Cir. 1999) ("Dennis must show actual injury in order to establish a violation of his right to court access. [ ] The only injuries Dennis has alleged are connected with his federal conviction in Pennsylvania.  In order to succeed with his claim, Dennis would therefore have to establish that his conviction was rendered invalid by the constitutional violations alleged.  Dennis has not, however, established this invalidity on direct appeal, in a habeas petition or in any other prior proceedings.  Dennis's present § 1983 action is therefore barred by the rule announced in *Heck*[.]"); *Vann v. Smith*, No. 13-CV-1316, 2013 WL 5676287, at *9 (D. Minn. Oct. 18, 2013) ("[I]f plaintiff were to show that defendants unconstitutionally prevented him from raising a legitimate challenge to his current prison sentence, then the validity of his sentence obviously would be in doubt.  In short, a judgment in plaintiff's favor on his current access-to-the-courts claim would necessarily imply that his sentence is invalid."); *see also id.* at 10 (listing cases nationwide for the same proposition).

[8] *See, e.g.*, *Sprinkle v. Robinson*, No. 2:02-cv-1563, 2017 WL 1079833, at *8 (E.D. Cal. Mar. 22, 2017) ("Cases like the instant one present exactly such a situation—plaintiff's substantive claim that defendants obstructed his access to the court in his state habeas petition does not necessarily impugn his conviction, but a claim that he is owed compensation for his incarceration because the habeas would have succeeded does.  Yet, in such cases, a plaintiff may obtain other damages that do not impugn the conviction.  For example, some compensatory damages are totally unrelated to the validity of a plaintiff's incarceration; e.g., the costs of preparing and filing the state petition."), *report and recommendation adopted*, 2017 WL 2812973 (E.D. Cal. June 29, 2017); *Arrellano v. Blahnik*, No. 16-CV-2412, 2017 WL 3530896, at *5 (S.D. Cal. Aug. 17, 2017) ("This Court finds the reasoning of *Sprinkle* to be most persuasive, and hereby adopts its analysis.  Plaintiff Arrellano may proceed on his access-to-courts claim to the extent that he seeks damages other than damages for wrongful incarceration.").

The Court finds that requiring a non-frivolous underlying claim in a prisoner's access-to-courts action does not necessarily imply the invalidity of his conviction and thus does not implicate *Heck*. To begin, in access-to-courts cases, a non-frivolous claim is one that is merely more than just "hope." *Christopher*, 536 U.S. at 416. Put differently, a lawsuit is deemed frivolous when the plaintiff's "realistic chances of ultimate success are slight." *Clark v. State of Ga. Pardons and Paroles Bd.*, 915 F.2d 636, 639 (11th Cir. 1990). Based on these definitions, non-frivolousness does not establish merit; it only means the claim's failure is not apparent on its face. *Cf. Driessen v. Barclays Bank, PLC*, No. 21-13437, 2022 WL 3042940, at *1 (11th Cir. Aug. 2, 2022) (discussing frivolity dismissals under 28 U.S.C. § 1915(e), "a complaint may fail to state a claim . . . and still be non-frivolous if it advances an 'arguably meritorious legal theor[y] whose ultimate failure is not apparent at the outset'" (quoting *Battle v. Central State Hosp.*, 898 F.2d 126, 128 (11th Cir. 1990))).

Courts reinforce this narrow view by reserving a finding of frivolousness only for claims wholly lacking arguable merit in fact or law. *See Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992) (recognizing that factual allegations are frivolous when they are clearly baseless, fantastic, delusional); *Clime v. GEICO*, No. 15-CV-443, 2015 WL 5882995, at *1 (M.D. Fla. Oct. 6, 2015) ("The Supreme Court has cautioned . . . that a case should only be dismissed as frivolous if it relies on meritless legal theories or facts that are clearly baseless" (citing *Neitzke v. Williams*, 490 U.S. 319, 327 (1989))). Given this framework, the non-frivolous element asks only whether the claim clears a threshold gatekeeping standard and not whether the outcome of the underlying proceeding would have differed. Although success on the non-frivolous claim in that proceeding could have an invalidating effect on a conviction, the non-frivolousness inquiry itself in an access-to-courts claim does not. *See Penton v. Johnson*, No. 11-CV-0518, 2019 WL 6618051, at *4 (E.D. Cal.

Dec. 5, 2019) (holding that *Heck* does not bar a claim where the plaintiff "is not challenging his conviction, and his claim for damages will not necessarily imply the invalidity of his underlying conviction or sentence[,] because any judgment in [such an] action would establish only that his habeas action was not legally frivolous").

The Court finds the Supreme Court's recent guidance in *Olivier v. City of Brandon* instructive. There, the Court cautioned against reading *Heck*'s "necessarily imply" language too broadly. *Olivier*, No. 24-993, 2026 WL 783725, at *7 (U.S. Mar. 20, 2026) (explaining that *Heck*'s phrasing "was not quite as tailored as it should have been" and that the Court "has often cautioned that 'general language in judicial opinions should be read as referring in context to circumstances similar to the circumstances then before the Court and not referring to quite different circumstances that the Court was not then considering'" (quoting *Türkiye Halk Bankasi A.Ş. v. United States*, 598 U.S. 264, 278 (2023))). The Court clarified that *Heck* targets suits that function as indirect attacks on a conviction—claims that, to prevail, must "negate an element of the offense" or otherwise contradict the basis for the judgment. *Id.* (quoting *Heck*, 512 U.S. at 486–87 & n.6). Such claims "require[ ] looking back to conduct involved in a prior conviction, and offering contradictory proof." *Id.* By contrast, Olivier's suit was "all future-oriented" and therefore fell outside *Heck*, even if success "as a kind of byproduct" cast doubt on a past conviction. *Id.*

Those distinctions are relevant here. The Court reads *Olivier* as affirming that *Heck* bars only those § 1983 claims that operate as genuine <u>assaults</u> on the conviction itself—and an access-to-courts claim simply does not do that. True, it was dispositive in *Olivier* that the plaintiff sought forward-looking relief, whereas an access-to-courts claim looks backward. But the upshot is simple: an access-to-courts claim does not require any "contradictory proof" of a wrongful conviction. The plaintiff need only make a threshold showing of non-frivolousness, which entails

no merits determination as to his loss of liberty.  Once that showing is made, the claim targets a different injury, namely, the loss of the right to seek redress or pursue constitutional challenges. Given this landscape, to rigidly apply *Heck*'s "necessarily imply" language to access-to-courts claims would improperly stretch that language in a way *Olivier* seems to counsel against.

This conclusion also follows from the expected lifecycle of an access-to-courts case. Courts ideally would resolve frivolousness as a threshold matter to determine if the claim is actionable in the first instance.  *Cf. Polk v. Munoz*, No. CV-419-233, 2021 WL 12177193, at *2 (S.D. Ga. Feb. 25, 2021) (recognizing that the deprivation of a prisoner's right "may be *actionable*" where the prisoner was attempting "to pursue a nonfrivolous legal claim" (emphasis added; quoting *Bass*, 143 F.3d at 1445)).  Then, the fact-finder's role is narrower: it decides whether the prisoner-plaintiff was afforded "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts," which turns on whether the defendants' alleged conduct hindered or interfered with that right.  *Lewis*, 518 U.S. at 351.  At no point will a jury evaluate the underlying claim's merit when deciding whether a prison official, in fact, retaliated against or denied court access to a prisoner.  *See* Eleventh Circuit Pattern Jury Instructions 5.2 (Sept. 2025) (pertaining to § 1983 claims of access-to-courts and retaliation in violation of the First Amendment).  In sum, the non-frivolousness element, while no doubt required, is merely collateral to the thrust and spirit of a prisoner's access-to-courts claim.  And unlike the claims that *Heck* targets, a prisoner's access-to-courts claim never requires proof—at any stage—that would invalidate the underlying judgment.

Lastly, the Court addresses the concern that juries might award damages based on a lost opportunity to litigate a potentially meritorious claim.  For prisoners, that concern is overstated. The Prison Litigation Reform Act restricts recovery absent physical injury, so only nominal

damages are available. 28 U.S.C. § 1997e(e) (providing that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act"); *see also Robles v. Kane*, 550 F. App'x 784, 787–88 (11th Cir. 2013) ("Robles' constitutional claim would, if successful, entitle him only to nominal damages. Prisoners like Robles—who claim interference with their legal mail but no actual injury—can receive only nominal damages." (citations omitted)); *see also Al–Amin v. Smith*, 637 F.3d 1192, 1196–98 (11th Cir. 2011) (explaining that, under the Prison Litigation Reform Act, prisoners cannot receive compensatory or punitive damages in the absence of a physical injury). In other words, the availability of only nominal damages alleviates any concern that fact-finders are awarding—or prisoners are seeking—damages based on the underlying claim's degree of merit.

For all these reasons, the Court finds that *Heck* does not apply to Plaintiff's access-to-courts claim. Since *Heck* did not have any tolling effect on his access-to-courts claim, Plaintiff's instant action is squarely barred under the statute of limitations. In this Circuit, a federal claim accrues when the plaintiff "knows or has reason to know of the injury which is the basis of the action." *McNair v. Allen*, 515 F.3d 1168, 1174 (11th Cir. 2008). Plaintiff's claim began accruing as early as 2007, when Plaintiff was apprised of the destruction of his records. *See* Am. Compl. ¶ 20. The four-year limitations period on his § 1983 access-to-courts claim has (obviously) long since passed.

Plaintiff makes one final attempt to invoke equitable tolling of the limitations period— from accrual to the point at which the Clerk of Court "certified that he did not possess the record"— to account for the time Plaintiff spent "attempt[ing] to acquire the Clerk of Court's official records of the transcripts" in good faith. *Id.* ¶ 24. The Court is unpersuaded. First, "[e]quitable tolling of

statutes of limitations is appropriate only when the plaintiff has established (1) extraordinary circumstances, and (2) due diligence." *Ditthardt v. N. Ocean Condos, L.P.*, 580 F. Supp. 2d 1288, 1293 (S.D. Fla. 2008).  Plaintiff satisfies neither prong to justify the drastic remedy of tolling a nearly ten-year period, during which he was simply requesting documents and awaiting a response. Second, the timeline is unclear.  The Court cannot determine when the Clerk allegedly certified that it lacked the requested records; the exhibits suggest only that the Clerk last communicated with Plaintiff on this issue in 2017.  *See* Am. Compl. at 92.  In any event, the four-year limitations period had long expired before Plaintiff filed this action in 2025.

### B.  Plaintiff Fails to State a Plausible Access-to-Courts Claim

In the alternative, the Court finds that Plaintiff has not stated a plausible access-to-courts claim.  At the outset, the Court will assume that Defendants' acts of deterrence—the destruction of Plaintiff's state court records—if true, are actionable.  *See, e.g.*, *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986) ("The allegation that prison officials seized Wright's pleadings and law book and destroyed other legal papers clearly states a claim of denial of access to the courts.  Prison officials may not deny or obstruct an inmate's access to the courts." (citation omitted)); *Bass*, 143 F.3d at 1445 (recognizing that the prisoner in *Wright* "sufficiently asserted that confiscation of the legal papers impaired his ability to challenge his conviction" and that a "district court therefore could not have dismissed [his] access-to-courts claim based upon a failure to allege actual injury" (alteration added)).

But Plaintiff fails to clearly identify the underlying non-frivolous claim.  No doubt, he often speaks broadly of pursuing postconviction relief to withdraw his plea agreement or correct his sentence several times, *see generally* Am. Compl., but Plaintiff does not identify any specific "claims being pursued" underlying his access-to-courts claim.  Therefore, Plaintiff fails to state a

claim for relief. *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008); *see also Cranford v. Nevada Dep't of Corr.*, 398 F. App'x 540, 548 (11th Cir. 2010) ("Cranford's assertions to this effect were conclusory, as he failed to describe any nonfrivolous claims that he presented in these motions and petitions[.]").

Even if he has identified a non-frivolous claim, Plaintiff's claim cannot proceed. While his allegations are extremely thin, the Court will assume for the sake of argument that the non-frivolous claim Plaintiff intended to pursue—at least, the only one meagerly supported by his allegations and attachments to his Amended Complaint—is that his written sentence did not comport with the oral pronouncement at sentencing. This is a claim that Plaintiff appears to have been unable to adequately press due to the lack of relevant sentencing transcripts. *See* Ex. L, Third DCA Order Reversing and Remanding, [ECF No. 11-1], at 33 (recognizing on August 5, 2009, that Plaintiff pursued through a motion to correct illegal sentence the claim "that [his] written sentence [did] not comport with the oral pronouncement at sentencing" and that the motion should not have been denied as successive because "[t]here [was] nothing in the attached records . . . to indicate that he ha[d] ever raised this issue before" (cleaned up)); *see also Sprengle v. Smith Mar. Inc.*, 660 F. Supp. 3d 1337, 1350 (M.D. Fla. 2023) ("[C]ourts may consider documents that are incorporated by reference into the complaint." (citation omitted)).

Still, Plaintiff does not bridge the gap between Defendants' alleged deterrence and any non-frivolous underlying claim. After all, he alleges that he later obtained "the necessary papers" to support a renewed motion to correct an illegal sentence, which resulted in a favorable judgment. Am. Compl. ¶ 25. He does not explain why transcripts were unnecessary for that successful motion yet necessary for some other non-frivolous challenge. That omission is ultimately a pleading defect—namely, Plaintiff's failure to allege facts showing that Defendants' conduct directly

hindered his ability to pursue a non-frivolous claim. *See Hines v. Bennett*, No. 13-CV-00644, 2014 WL 4686558, at *10 (N.D. Ala. Sept. 19, 2014) (recognizing that a "'plaintiff must allege that the denial of access proximately caused some prejudice to a legal claim[ ]' in order to adequately state a denial of access to the courts claim" (quoting *Heister v. Kralik*, 981 F. Supp. 830, 840 (S.D.N.Y. 1997))).  Because Plaintiff cannot satisfy causation, he fails yet again to state a plausible access-to-courts claim.

Accordingly, Plaintiff's First Amendment access-to-courts claims against Laws, Carter, and Laws Reporting, Inc. are **DISMISSED** as barred by the statute of limitations and insufficiently pled.

**CONCLUSION**

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that Plaintiff Luis Sanchez's *pro se* "Amended Complaint and Demand for Jury Trial," [ECF No. 11], is **DISMISSED with prejudice**.  All pending motions are **DENIED as moot** and all deadlines, if any, are **TERMINATED**.  This case is **CLOSED**.

**DONE AND ORDERED** in Miami, Florida, this 8th day of April, 2026.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

cc:   Luis Sanchez
      452144
      Dade Correctional Institution
      Inmate Mail/Parcels
      19000 SW 377th Street
      Florida City, FL 33034
      PRO SE